AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 21- 115M
a black, Apple iPhone seized from the person of Zidre )
Cephas on January 14, 2021. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ District of ___Delaware___ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) | Distribution and possession with intent to distribute a controlled substance; |
| 21 U.S.C. § 843(b) | Illegal use of communication facility in furtherance of narcotic trafficking; |
| 21 U.S.C. § 846 | Attempt and conspiracy to commit the foregoing offenses. |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kenneth Odom, TFO, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___e-mail and telephone___ *(specify reliable electronic means)*.

Date: March 26, 2021

*Judge's signature*

City and state: Wilmington, Delaware     Christopher J. Burke, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

In the Matter of the Search of a black, Apple iPhone seized from the person of Zidre Cephas on January 14, 2021.

Case No. 21- 121M

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Kenneth Odom, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device described in Attachment A – which is currently in law enforcement possession, and the extraction from that property of the electronically stored information described in Attachment B.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of a State who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. I am employed as a TFO with the DEA assigned to the Philadelphia Field Division, Wilmington Resident Office ("WRO") since January, 2019. In addition to being assigned as a TFO with the DEA, your Affiant has been employed as a Police Officer with the Newark Police Department ("NPD") since March 28, 2011.  Prior to being assigned as a TFO with the DEA, your Affiant spent three years in NPD's Street Crimes Unit investigating drug dealers.

1

4. I have participated in numerous narcotics investigations and have become familiar with, among other things, the manner in which illegal drugs are imported, packaged and distributed; the method of payment for such drugs; and the efforts of persons involved in such activities to avoid detection by law enforcement.

5. I have specialized training and experience in narcotics trafficking, conspiracy, and distribution investigations, including pharmaceutical controlled substances investigations. I have participated in all aspects of drug investigations, including the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, the execution of search and arrest warrants, the use of court-ordered intercepts of wire communications, investigative interviews, the arrests of numerous drug traffickers, and the analysis of seized records, physical evidence, and taped conversations. I have spoken with numerous defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of narcotics trafficking organizations. I am in constant communication with other experienced narcotics investigators concerning the methods and practices of drug traffickers. In addition, I have spoken with pharmacists, physicians, diversion investigators, medical board investigators, patients, and other witnesses having extensive knowledge of prescription drugs with regard to the methods and practices of trafficking and/or diverting such substances for unlawful use.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

7. The property to be searched is a black, Apple iPhone, hereinafter the "Device." The Device belongs to Zidre Cephas ("Cephas") and is currently located in evidentiary storage at the DEA WRO in New Castle, DE.

8. The Device was lawfully seized from the person of Cephas on January 14, 2021 subsequent to his arrest in Wilmington, DE for drug-related offenses. While the DEA might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

9. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

10. In early January 2021, Detective James Wiggins of the Wilmington Police Department ("WPD"), a member of the WPD Safe Streets Task Force ("Task Force"), received information from a confidential informant (hereafter referred to as, "CI") that a Black male named "Zidre," but known as "Tink," hangs out in the block area of 6th and Jefferson streets in Wilmington selling crack cocaine. The CI also informed Det. Wiggins that "Tink" possesses a firearm and that he sometimes keeps that and his crack cocaine inside of a gray Dodge Charger bearing New Jersey tags. The CI further provided the cellular phone number used by Tink to conduct his business. At the time he received this information, Det. Wiggins made a note but did not take any action on the information.

11. At a later meeting the CI was presented a photo of Zidre Cephas. The CI confirmed this was the individual known as "Tink."

3

12. Cephas was on federal probation, his prior federal conviction being the illegal possession of a firearm by a felon. Law enforcement contacted the probation office and was able to confirm that the cellular phone number the CI provided was the same number Cephas provided to his probation officer.

13. On January 14, 2021, around noon, three Task Force members conducted surveillance in the area of 6th and Jefferson and observed Cephas in that area. Cephas was with three other male individuals. The officers also observed a gray Dodge Charger bearing New Jersey tags parked just one block away from Cephas. This was consistent with the vehicle the CI told law enforcement belonged to Cephas and that often contained his firearm and/or drugs.[1]

14. The officers approached Cephas and the other three individuals on foot and asked for the names and identification of each. After further interaction, Sgt. Matthew Rosaio conducted a pat down of Cephas and felt a bulge consistent with small, packaged drugs in Cephas' waistband. Sgt. Rosaio retrieved the bulge, which appeared to be packaged marijuana. Cephas was then handcuffed and searched. Cephas was asked how he got to the location, and he said he was dropped off. The search revealed keys to a Dodge Charger in his pocket. Cephas was again asked how he got there, and he denied having access to any vehicle.

15. Cephas was then placed in the back of the officers' car and they drove down one block to the Dodge Charger. Sgt. Rosaio determined that the keys from Cephas' jacket matched the vehicle. A K-9 unit conducted an exterior sniff of the vehicle, to which the dog positively alerted to the presence of narcotics.

---

[1] Based on my training and experience, drug dealers often park their vehicles close enough to keep an eye on them, but far away enough to distance them from the vehicle in case they are stopped by the police.

16. Cephas and the vehicle were taken back to the station and searched. In sum, below is a listing of what was seized between Cephas' person and the vehicle:

   a. A black Apple iPhone;

   b. 81.2 grams of crack cocaine;

   c. Numerous blue zip-locked baggies;

   d. Six small zip-locked baggies each with a white wax paper stamped "Black cobra" and containing a substance containing heroin, weighing approximately .042 grams in total;

   e. A digital scale with suspected cocaine residue on it;

   f. A box of sandwich bags;

   g. Numerous clear plastic baggies;

   h. A TD Bank and Visa debit card with Cephas' name on each;

   i. $508.00; and

   j. 5 grams of packaged marijuana.

17. Based on my training and experience, the items seized are consistent with someone who is engaged in the trafficking of narcotics.

18. From experience and training, I have learned that narcotics traffickers utilize electronic devices, such as cellular phones, to:

   a. Further their illegal activities by, among other things, remaining in constant or ready communication with one another without particular location restrictions which might be the subject of physical surveillance by law enforcement authorities;

   b. Make payments via various online applications such as Cash App, Venmo, etc.;

      c.      Maintain lists of names, addresses, and/or telephone numbers of their customers and associates in their mobile phones;

      d.      Communicate with other members of their drug trafficking organizations and/or customers and other associates via text message or other apps that allow for text messages (for example, WhatsApp);

      e.      Take and store pictures of associates, guns, drugs, and drug proceeds.

19.      Based on the above, Your Affiant believes there is probable cause to believe the Device contains evidence of illegal narcotics trafficking, in violation of 21 U.S.C. §§ 841, 843(b), and 846.

## TECHNICAL TERMS

20.      Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments,

    and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision. GPS coordinates can be imbedded into photographs taken with cellular phones, which can show locations where the photographs were taken and lead to the identification of assets, stash houses, and locations utilized by drug trafficking organizations. Also GPS coordinates of the cellular device can be stand-alone data that shows the location of the cellular device which can be utilized to confirm court ordered GPS ping data previously obtained in the investigation.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable

       storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my knowledge, training, and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

        team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

    25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

    26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Kenneth Odom*

Kenneth Odom, Task Force Officer
Drug Enforcement Administration


Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this __26th__ day of March, 2021.

*Christopher J. Burke*

HONORABLE CHRISTOPHER J. BURKE
United States Magistrate Judge

**ATTACHMENT A**

The property to be searched is a black, Apple iPhone, hereinafter the "Device." The Device belongs to Zidre Cephas ("Cephas") and is currently located in evidentiary storage at the DEA WRO in New Castle, DE.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a) (distribution and possession with intent to distribute a controlled substance), 843(b) (illegal use of communication facility in furtherance of narcotic trafficking), and/or 846 (attempt and conspiracy to commit the foregoing offenses), and others, since at least December 18, 2020, including:

    a.  All user generated data stored on the Device, and/or Subscriber Identity Module (SIM) cards and/or MicroSD cards (contained within the Device), such as, but not limited to: phone ownership, brand, make & mode, serial number, IMEI, cellular service/network provider or carrier information, user/owner account information, calendar events, contact lists, SMS (short message service) & MMS (Multimedia messaging service), call log details, e-mail accounts, Internet web browsing activity, GPS information, IP connections, user generated notes, user generated dictionaries, wireless network connections, sync files, voicemails, removable media storage cards (SD, microSD, etc.), Subscriber Identity Module (SIM) cards, digital photographs, video files, audio files, purchased and deleted applications and their data, social networking data, all operating system files (database files), other electronic files, and all deleted data.

    b.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    c.  Records of Internet Protocol addresses used;

d. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

e. Records of images, videos, text messages, symbols, and/or any other form of communication sent and/or received via any downloaded social media messaging applications such as What's App, Viber, etc.;

f. Records of any transactions utilizing Internet payment applications such as Venmo, Cash App, etc;

g. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions, as well as customers and related identifying information;

h. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.